IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **YANCEY D. WILLIAMS,** )<br>)<br>Plaintiff, )<br>**vs.** )<br>)<br>**BIRMINGHAM BOARD OF** )<br>**EDUCATION,** )<br>)<br>Defendant. ) | Civil Action Number<br>**2:11-cv-3487-AKK** |

### MEMORANDUM OPINION AND ORDER

Yancey Williams, who is male, filed this action against the Birmingham Board of Education ("BBOE") alleging gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for failure to promote him to a principal position. Doc. 1. Basically, Williams contends that the BBOE's decision to select women for four of seven permanent or interim principal positions is evidence that the BBOE denied him these positions because of his gender. The BBOE has moved for summary judgment, doc. 13, and the motion is fully briefed and ripe for review, docs. 14, 17, 19. For the reasons set forth below, the court **GRANTS** the motion.

### I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II. <u>FACTUAL BACKGROUND</u>

Williams, who has a Bachelor's degree in Social Science with a focus in education from Miles College and a Master's Degree in Educational Leadership and an Educational Specialist degree from the University of Alabama at Birmingham, began working as a teacher in the Birmingham school system in 1997.  Doc. 15-1 at 5-7.  Williams left in 1999 or 2000 to work as an assistant principal in the Fairfield school system.  *Id*. at 7-8.  After the Fairfield system discharged him, Williams worked for Serra Toyota and Crown Nissan as a car salesman.  *Id*.  The BBOE re-hired Williams as a teacher in 2002, and promoted him to his current position of assistant principal approximately a year later.  *Id*. at 7-10.

**A.    Williams alleged selection as principal of Hill Elementary School**

Williams contends that the BBOE discriminated against him by promoting him to Hill Elementary School principal, giving him the keys to the school, and, subsequently, rescinding the promotion and awarding it to a female.  Doc. 1 at 2 ¶ 8(a).  To support this contention, Williams testified that he interviewed with the BBOE and received the principal position at Hill Elementary sometime during the Christmas break of either 2005, 2006, or 2007, while he was assistant principal at Daniel Payne Middle School.  Doc. 15-1 at 11-13.  According to Williams, former

Superintendent Dr. Wayman Shiver and the assistant superintendent Dr. Rosalyn Childress notified Williams of his selection via separate telephone calls. *Id*.; doc. 18 at 1 ¶ 3. Thereafter, Williams received the keys to Hill Elementary and had two debriefing meetings with the outgoing principal. Doc. 15-1 at 12-13. However, shortly thereafter, Dr. Shiver and Dr. Childress purportedly told Williams to surrender the keys and rescinded the decision to promote Williams. *Id*. at 14. The BBOE appointed Taylor Green, a male, as the principal of Hill Elementary in February 2006. Docs. 15-1 at 17; 15-2 at 5. The BBOE denies it ever approved Williams as principal of Hill Elementary. Doc. 15-2 at 5.

B.  **Failure to select Williams for seven principal positions**

Williams applied unsuccessfully for seven other principal positions during the 2010-2011 school year and claims "several people with less time in the district or less time as assistant principals were [] appointed..." Doc. 18 at 1-2 ¶ 4; 15-1 at 20. Moreover, Williams asserts that "[t]here have been female applicants appointed and/or selected as Principals and/or Interim Principals at a disproportionate rate than that of similarly situated males by the Board[,]" and that "[a]pplicants have been selected that have less experience at the Assistant Principal level and/or who have lower level post-graduate degrees than myself." Doc. 18 at 2 ¶ 5, 6. The BBOE denies discriminating against Williams and

contends that it hired the most qualified applicant for each position. Doc. 19 at 4 ¶ 3; *see* doc. 15-2. The positions, the persons selected, if any, and the reasons for the selection decisions are outlined below:

### 1.     *TOAR Riggins School*

The BBOE appointed Fred Stewart, a male, as principal at TOAR Riggins Alternative School. Doc. 15-2 at 1 ¶ 2. Stewart had four years experience as a principal in the BBOE system prior to his selection. *Id*. The BBOE contends that Stewart was more qualified than Williams because of Stewart's experience as a principal. Doc. 14 at 4.

### 2.     *Jackson Olin High School*

The BBOE appointed Janice Drake, a female, as principal at Jackson Olin High School. Doc. 15-2 at 2 ¶ 3. Prior to her appointment, Drake worked for the BBOE as an assistant principal at the high school level for approximately nine and a half years. *Id*. The BBOE believed Drake was more qualified than Williams because she had five more years of experience than Williams as an assistant principal. *Id*.; doc. 14 at 5.

### 3.     *North Roebuck Elementary School*

The BBOE initially posted a vacancy at North Roebuck Elementary due to the planned retirement of the then principal. Doc. 15-2 at 2-3 ¶ 4. However, the

BBOE subsequently decided to hire someone on an interim basis because it planned to close and consolidate several schools at the end of the 2010-2011 school year. Doc. 15-2 at 2-3 ¶ 4. In light of the possibility that North Roebuck would be one of the affected schools, the BBOE appointed Dr. Nichole Davis, Ed.D., a female who was the assistant principal at Martha Gaskins Middle School, as interim principal for the remainder of the 2010-2011 school year. *Id*. The BBOE believed Dr. Davis was more qualified than Williams because she holds a doctorate degree in Educational Leadership and graduated with a 4.0 G.P.A. *Id*.

### 4. *Wenonah Elementary School*

Similarly, in January of 2011, the BBOE hired Willie Goldsmith, a male, as interim principal at Wenonah Elementary when the then principal retired. Doc. 15-2 at 3 ¶ 5. The BBOE thought Goldsmith was more qualified because Goldsmith had previously served as a principal in the BBOE system. *Id*. Wenonah Elementary is now closed. *Id*.

### 5. *Gaston K-8 School*

The BBOE decided to close Gaston K-8 School at the end of the 2010-2011 school year. Doc. 15-2 at 3-4 ¶ 6. Therefore, when the BBOE promoted the former principal, Fred Stewart, to principal of TOAR Riggins Alternative School in October of 2010, the BBOE decided to replace Stewart with an interim

principal. *Id*. As a result, the BBOE appointed Terry Bush, a female who was the assistant principal of Gaston, as interim principal for the remainder of the 2010-2011 school year. *Id*. The BBOE believed Bush was more qualified than Williams because she was the assistant principal at Gaston prior to her selection and had approximately six years of experience as an assistant principal in the BBOE system. *Id*.

### 6. *Going Elementary School*

The BBOE also decided to appoint an interim principal for a vacancy at Going Elementary due to the pending consolidations and closings. The BBOE selected Irene Hunter as interim principal. Doc. 15-2 at 4 ¶ 7. Hunter had approximately nine years of experience as a principal at the time of her selection. *Id*. Going is now closed. *Id*.

### 7. *Wright Elementary School*

After posting a vacancy for a principal at Wright Elementary, the BBOE decided not to fill the position due to the planned school consolidations and closings. Doc. 15-2 at 4-5 ¶ 8. The BBOE subsequently closed Wright Elementary. *Id*.

### C.   Williams' EEOC Charge of Discrimination

Williams filed an EEOC charge of gender discrimination alleging that the BBOE

> subjected [him] to harassment in that [he] was granted a promotion to a principal's position, given the keys and had the awarding of the position reversed by the employer. . .[that he was] not even afforded an interview when [he] appl[ied] for a principal's position. . . [and that] In January 2011, all of the positions were filled and [he] was not awarded either.  Four of the five positions were filled by females. One of the positions was filled by a female with less seniority than [him] as an assistant principal.  Females are being hired as principals at a much higher rate than males who have equal or greater seniority.

Doc. 15-1 at 46.  After the EEOC issued a right to sue letter, Williams filed this lawsuit.  Docs. 1 and 15-1 at 47.

## III.  ANALYSIS

Where, as here, Williams offers only circumstantial evidence of discrimination, under the well-established *McDonnell Douglas* burden-shifting analysis, he must first create an inference of discrimination by establishing a prima facie case, creating a rebuttable presumption that the employer acted illegally. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997)).  Under the *McDonnell Douglas* framework, to prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of gender discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were

promoted. *Wilson*, 376 F.3d at 1089 (citing *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000)).

When the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id*. (citing *Texas Dept. of Community of Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981)). If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.* (citing *Burdine,* 450 U.S. at 255-26). "To show pretext, a plaintiff may demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reasons for the employment action such that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal quotations omitted). "However, the plaintiff cannot merely quarrel with the wisdom of the employer's reason, but must meet the reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotations omitted). Despite the shifting of the burden of production between the plaintiff and the defendant under the

*McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson*, 376 F.3d at 1088 (citation omitted).

As shown below, Williams failed to establish that the BBOE denied him the positions in contention because of his gender.

A.  **Hill Elementary School Principal Incident**

Williams contends that the BBOE discriminated against him based on his gender "by offering and awarding him a promotion...to a principal's position" at Hill Elementary, and, subsequently, reversing the decision and awarding it to a female. Doc. 1 at 2 ¶ 8(a). Unfortunately for Williams, his Title VII claim is untimely because he failed to file his EEOC charge within 180 days of the alleged act of discrimination. In fact, although the BBOE allegedly selected Williams and then denied him the promotion as principal of Hill Elementary School in 2006,[1] Williams only filed his EEOC charge on March 18, 2011, almost five years later and well after the deadline. *See Delaware State College v. Ricks*, 449 U.S. 250, 256 (1980) (Under Title VII, "[i]f a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and

---

[1] Although Williams testified that this incident occurred in 2005, 2006, or 2007, he does not dispute that the BBOE appointed Taylor Green as principal of Hill Elementary in February 2006, after the BBOE purportedly rescinded the offer to Williams. Therefore, the court will use the 2006 date for this opinion. *See* docs 15-1 at 17; 15-2 at 5.

must be dismissed for failure to exhaust administrative remedies."). Alternatively, the claim fails also because the BBOE awarded the position to a male, a fact Williams conceded in his deposition. *See* doc. 15-1 at 17. Consequently, Williams cannot establish that "other equally or less qualified employees who were not members of the protected class were promoted." *See Wilson*, 376 F.3d at 1089. Therefore, the BBOE's motion regarding the Hill Elementary position is **GRANTED**.

**B.     Seven other principal positions with BBOE**

With respect to the other positions, the BBOE challenges only whether Williams meets the fourth element of the prima facie case,[2] – that is, whether "equally or less qualified employees [than Williams] who were not members of the protected class were promoted." *See Wilson,* 376 F.3d at 1089; doc. 14 at 16. Indeed, Williams cannot establish a prima facie case for the TOAR Riggins and Wenonah Elementary positions since the BBOE selected males for these two positions. *See* doc. 15-2 at 1, 3 ¶¶ 2, 5; *see also Wilson*, 376 F.3d at 1089. Similarly, Williams' prima facie case regarding the Wright Elementary position also fails because the BBOE decided not to fill that vacancy, *see* doc. 15-2 at 4-5 ¶

---

[2] (1) Williams, as a male, is a member of a protected class, (2) he was qualified for the principal positions since he had a Master's Degree, and he applied for all seven principal positions at issue, and (3) he was not selected for any of the positions at issue. *See Wilson*, 376 F.3d at 1089.

8, and Williams failed to present any evidence that the BBOE did so to prevent him from getting the position because of his gender. Consequently, the BBOE's motion regarding TOAR Riggins, Wenonah Elementary, and Wright Elementary is **GRANTED**.

As to the remaining four positions, Williams failed to dispute the qualifications of the women the BBOE promoted to the vacancies at Jackson Olin, North Roebuck, Gaston, and Going. *See* docs. 14; 15-2; 17 at 2-5 ¶¶ 10, 13, 22-24, 34, 40. Instead, Williams contends primarily that he is more qualified than the women. Unfortunately for Williams, "the fact that [he] thinks more highly of [his] performance than [his] employer does is beside the point. The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (citation omitted). Here, the employer believed that the women it selected were more qualified because they had more years of experience than Williams as either assistant principal or principal, and one candidate, Dr. Nichole Davis, had a doctorate degree.[3] *See* doc. 15-2. The evidence supports the BBOE's contentions

---

[3]Williams contends that Dr. Davis's degree is "immaterial and self serving in that only a Master's Degree is required for this position." Doc. 17 at 3 ¶ 22. The court disagrees. There is nothing in the law that prohibits an employer from preferring a candidate whose qualifications exceed the minimum requirements.

regarding the years of experience and Dr. Davis's degree.  Consequently, based on the record before this court, Williams failed to establish that these four women were "equally or less qualified" than him, and, as such, his prima facie case fails. *See Wilson*, 376 F.3d at 1089.

Alternatively, Williams' claims fail because he failed to rebut the BBOE's legitimate, nondiscriminatory reasons for the selection decisions.  Again, the BBOE presented evidence that it promoted the most qualified applicant for each position, and presented reasons to support its contentions.  In light of the BBOE's contentions, the burden shifts back to Williams to establish that the BBOE's reasons are pretextual.  *See Wilson*, 376 F.3d at 1086.  To meet his burden, Williams contends that the BBOE "offers shifting reasons for its interim/temporary appointments of Dr. Nichole Davis and Irene Hunter to principal due to consolidation - they both had no previous experience at the principal level.  But the record is replete with evidence that the reason proffered by the Defendant is mere pretext for their sexism." Doc. 17 at 9-10.  This contention is unavailing because the BBOE stated that it selected Dr. Davis because she held a doctorate degree and Hunter because she had nine years of principal experience.  *See* docs. 15-2 at 2-4 ¶¶ 4, 7.  Moreover, Williams contends that "one would find that Williams has a Eds degree while Drake only holds a

Master's degree.  Therefore, evidence of pretext is also found in the fact that William's [sic] qualifications for the Principal position dwarf those of Drake's such that no reasonable person, exercising impartial judgment, would have picked her over Williams."  Doc. 17 at 10.  This contention misses the mark also because the BBOE stated that it selected Drake over Williams because she had five more years experience as an assistant principal.  *See* docs. 15-2 at 2 ¶ 3.  Williams failed to address this contention.

     Unfortunately for Williams, his contentions fail to demonstrate "such weaknesses, implausibilities, inconsistences, incoherencies or contradictions" that are necessary to show pretext in BBOE's "proffered legitimate reasons for its actions [such] that a reasonable factfinder could find them unworthy of credence."  *See Cooper*, 390 F.3d at 725.  In fact, the crux of Williams' contentions attempt simply to "merely quarrel with the wisdom of the employer's reason," instead of "meet[ing] the reason head on and rebut[ing] it." *See Chapman*, 229 F.3d at 1030.  As the Eleventh Circuit made clear, "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id*. (internal quotations and citations omitted).  Put differently, in promotion cases, "[w]e do not ask whether the employer selected the 'most' qualified candidate, but

only whether it selected the candidate based on an unlawful motive." *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001) (citation omitted).  Based on this record, the BBOE has established that its decision to prefer more experienced and/or educated candidates was based on legitimate non-discriminatory reasons.

In the final analysis, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson*, 376 F.3d at 1088.  Williams failed to meet that burden here.  Therefore, the BBOE's motion for summary judgment is **GRANTED**.

## IV.  CONCLUSION

Based on the foregoing reasons, Williams failed to establish a prima facie case of gender discrimination, and, alternatively, Williams failed to show that the Birmingham Board of Education's articulated reasons are pretextual.  Therefore, the Birmingham Board of Education's motion for summary judgment is **GRANTED**.  This case is **DISMISSED with prejudice**.  Costs taxed against Williams.

**DONE** the 15th day of March, 2013.

                                         _____
                                         **ABDUL K. KALLON**
                                         UNITED STATES DISTRICT JUDGE